IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**JOSE HERNANDEZ**                                                              **PLAINTIFF**

**VS.**                          **CIVIL ACTION NO. 5:16-cv-57-KS-MTP**

**MANAGEMENT & TRAINING CORPORATION**
**and JOHN AND JANE DOES 1-100**                                     **DEFENDANTS**

## AMENDED COMPLAINT

*Jury Trial Demanded*

1. This Amended Complaint is brought by Jose Hernandez, by and through undersigned counsel, against Management & Training Corporation and John and Jane Does 1-100.

## JURISDICTION AND VENUE

2. Subject Matter Jurisdiction is appropriate in federal court since a federal question is raised pursuant to 42 U.S.C. 1983 as well as the 8th and 14th Amendments to the United States Constitution. Subject Matter Jurisdiction is also appropriate based upon diversity of citizenship as the Plaintiff and Defendant are citizens of different states and the claim is in excess of $75,000.00. 28 U.S.C. § 1332. The Court also has pendent jurisdiction over the Plaintiff's state causes of action.

3. Venue is appropriate in this Court as all acts and/or omissions occurred in Wilkinson County, Mississippi, which is located within the Southern District of the United States District Court, Western Division.

## PARTIES

4. Plaintiff, Jose Hernandez (hereinafter, "Plaintiff"), is currently an inmate incarcerated at the South Mississippi Correctional Institution, located at 22689 Highway 63, Leakesville, Mississippi 39451.

5. Plaintiff was, at all times material to this Complaint, incarcerated at the Wilkinson County Correctional Facility (hereinafter, "WCCF"), located at 2999 U.S. Highway 61 North, Woodville, Wilkinson County, Mississippi 39669. Substantial acts, omissions, and events that caused Plaintiff's injuries took place in Wilkinson County. At the time of the incident which gives rise to this Complaint, Plaintiff was a thirty-eight (38) year old citizen of the State of Mississippi, and a prisoner incarcerated at WCCF.

6. Defendant, Management & Training Corporation (hereinafter, "MTC" or "Defendant"), a national for-profit prison operator incorporated and existing in the State of Utah, was awarded a five (5) year contract by the Mississippi Department of Corrections, ("MDOC") in May, 2013 for the management and oversight of the prison's daily operations, under which it has the responsibility for providing humane care and treatment consistent with all constitutional and ACA standards. MTC's 5,545 employee Corrections Division operates twenty-four (24) correctional facilities throughout the United States, having seventeen (17) contracts with state correctional departments and seven (7) with federal correctional agencies. Since MTC's taking control of WCCF's daily operations on July 1, 2013, the acts, omissions and events giving rise to Plaintiff's complaint continued under its new management. MTC's principal place of business is located at 500 North Marketplace Drive, Centerville, Utah 84014, and is subject to the in personam jurisdiction of the Court by service of process upon its appointed registered agent, CT Corporation System, located at 645 Lakeland East Drive, Suite 101, Flowood, Rankin County, Mississippi 39232.

7. The Plaintiff is ignorant as to the identities of John and Jane Does 1-100 who are unknown MTC officers, employees, agents, and or servants. Plaintiff will amend this Complaint to allege their true names and allege that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages, as

alleged herein, were proximately caused by their conduct. Plaintiff, upon information and belief, asserts that the Doe Defendants were the officers, agents, servants, and employees of each of the other Defendants herein, and were acting with the permission and consent within the course and scope of said agency and employment.

## FACTS

8. Approximately two (2) weeks prior to June 8, 2015, Plaintiff and another inmate, known as "Fat Pat", engaged in an altercation with another inmate, "P-Nut". The inmates were ordered to do so by "Ren", who was known to be the leader of the "Vice Lords" gang; he threatened them both with grave bodily harm and/or death if they did not follow through. Plaintiff and Fat Pat did not want to harm P-Nut; however, being afraid for their own lives, they determined to simply beat him up rather than stab him as ordered. Soon thereafter, Ren learned of the inmates disobedience, and made them aware that they were not only disavowed from the gang, but they were to be stabbed, themselves, for their actions. Plaintiff and Fat Pat panicked, and determined to go after Ren, themselves, believing that once caught, they would be placed in protective custody. Fat Pat stabbed Ren while Plaintiff beat him. Later that day, Plaintiff was placed in segregation, presumably pending an investigation, administrative hearing, and findings relative to the incident.

9. Approximately twenty-four (24) hours after being placed in segregation, Plaintiff was moved into a general population section of WCCF known as "A" Pod. The following day, after being advised by the Warden that he was unsafe in "A" Pod, Plaintiff was returned to segregation. Yet again, however, after approximately three (3) hours, he was told to pack his belongings once more as he was to be returned to "A" Pod.

10. Plaintiff, fearful for his own safety, pleaded to remain in segregation, but was initially denied; upon arrival to "A" Pod, however, inmates known to be Vice Lords advised the

officer transporting him that they had orders to stab him, and not to bring him inside. She placed Plaintiff in a holding cell for a short while before advising him that he was to be transferred to a general population section of WCCF known as "U" Pod. Plaintiff objected to the move, voicing his concerns to officials that other members of the Vice Lords were being housed there.

11. Despite Plaintiff's objections, he was transferred to "U" Pod. Soon after his arrival he was advised by two (2) inmates, both Vice Lords, that another Vice Lord with a cell phone was working to clear up the hit that was on him. He remained in his cell, and sometime later he was called to go up to the Vice Lord's cell to use his cell phone as the matter had purportedly been taken care of. Upon his arrival, approximately eight (8) or nine (9) members of the Vice Lords were in the cell waiting on him; they locked the door behind him and commenced a brutal attack. Before it was over, he had been stabbed forty-four (44) times, incurring serious, life-threatening injuries. Once finished, the inmates left him, locked inside the cell, to die. Despite crying for help from the officers, he was ignored. Eventually, he was let out by another inmate, and he made his way to the Pod door where he was noticed by officers and taken to the medical unit. Upon information and belief, MTC employees aided and assisted other inmates by moving the Plaintiff out of segregation so that the inmates could attack him. Plaintiff submits that MTC employees, including supervisors, routinely worked for gang members and assisted in similar attacks in the past as well as facilitating the flow of contraband throughout the prison.

## CONDITIONS AT WCCF

12. Prior to the subject incident, WCCF was besieged with gang violence and contraband. The gang population was so out of control that gang members essentially controlled the prison. WCCF guards and other staff members assisted gang members by bringing in contraband. In return, gang members would pay the WCCF employees via "green dot cards". In addition, some WCCF employees were affiliated with gang members and afforded them

favorable treatment and even aided and abetted the gang members in their illicit behavior. Gang members were selling drugs, cell phones and other contraband with the assistance and/or approval of MTC employees. The introduction of this contraband into the prison contributed to the atmosphere of violence in existence at the prison.

13. It is well documented that cell doors in most all of the units at the facility can easily be "rigged" to remain unlocked when shut—if the locks are operational in the first place—allowing inmates to leave their cells at any time and to enter the cells of others, resulting in many assaults. There have been numerous incident reports regarding assaults whereby inmates escaped or entered other cells through "rigged," or non-operational doors. MTC has failed to take adequate measures to ensure that the defective doors are replaced and has failed to supervise officers adequately to ensure that they routinely and effectively examine doors to check for rigging.

14. MTC supervisors and employees, including guards, were aware that the vast majority of prisoners had altered the locks on their doors which allowed the prisoners to open their cell doors whenever they chose to. Surveillance video exists which shows prisoners moving around the prison at night during which they are required to be locked down. MTC employees simply turned a blind eye to such actions, either because they were being paid to "look the other way" or simply did not care. MTC and its employees' actions constituted negligence, gross negligence and deliberate indifference to the safety of the prisoners, including the Plaintiff.

15. Weapons, such as homemade knives, were readily available at WCCF. Prisoners would utilize materials in the prison or get material smuggled in from guards. Some prisoners had homemade knives which were the size of swords.

16. MTC officials and employees were aware of the prevalence of weapons at the prison. Guards who were being paid by gang members simply looked the other way. Others did not care or did not report the incidents due to the fear of gang retaliation. Regardless, MTC officials failed to take proper precautions and safety measures to curtail weapons inside the prison.

17. Upon information and belief, MTC officials failed to conduct enough shakedowns, and when shakedowns were done, the guards would either ignore contraband or simply not report it due to the fact they were being paid by gang members. Such actions and inactions contributed to the incident in which the Plaintiff was attacked.

18. In order to deal with gangs in prison, sound correctional policy mandates that prison officials institute programs to deal with gangs. Prison officials label gangs as "Security Threat Groups" ("STG's"). Such STG programs involve the prevention, identification, and management of gangs in prison. Upon information and belief, MTC has failed to institute any program to deal with the gang situation which exists at WCCF or has applied such measures with negligence, gross negligence and/or deliberate indifference. Such failures led to the Plaintiff's injuries.

19. MTC was understaffed on the day the Plaintiff was attacked. MTC has a pattern and/or practice of understaffing at WCCF. The guards who are on duty are inadequately trained and/or supervised to handle the prison population which exists at WCCF. MTC's actions and inactions were negligent, grossly negligent, and/or deliberately indifferent to the safety and well-being of the Plaintiff.

## NEGLIGENCE/GROSS NEGLIGENCE

20. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 19 hereinabove.

21. At all times relevant herein, every Defendant had a duty to exercise ordinary care for the prisoners at WCCF, including the Plaintiff. Every Defendant breached that duty, by failing to use the ordinary care that a reasonable person would use to avoid injury to others, which led directly to the injuries sustained by the Plaintiff. The breach was so egregious as to amount to gross negligence. The Defendant was understaffed and could not send in the necessary man power to control the situation and stop the brutal attack upon the Plaintiff. WCCF has a history of gang problems and violent outbreaks so much so that the inmates call the prison "the Killing Fields".

22. MTC knew that the cell door locks could be easily compromised by inmates and had been aware of this fact since the time MTC took over operating the facility. Despite having this knowledge, MTC failed to take reasonable steps to remedy the locks. This failure directly led to the Plaintiff's injuries.

23. Plaintiff's injuries were the reasonably foreseeable outcome of Defendant's acts and omissions. These acts and/or omissions were substantial factors in bringing about the Plaintiff's injuries.

**NEGLIGENT AND/OR GROSSLY NEGLIGENT HIRING AND SUPERVISION**

24. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 23 hereinabove.

25. Plaintiff alleges Defendants MTC and John Does 1-100 negligently, or gross negligently, hired, supervised, and retained its employees, inter alia, by a) failing to care for and ensure the Plaintiff's safety while at WCCF; b) properly train, supervise, discipline, retain, hire, and/or discharge its employees agents, and/or representatives; and c) were otherwise negligent or grossly negligent in their care and treatment of the Plaintiff, and as a direct and proximate result, the Plaintiff sustained the injuries and damages alleged herein.

**RESPONDEAT SUPERIOR/VICARIOUS LIABILITY**

26. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 25 hereinabove.

27. MTC and Defendant John Does 1-100 acted with negligence, gross negligence, and/or intentionally by opening the cell doors on June 19, 2015, or by failing to ensure the cell doors were properly secured. At all times relevant, each Defendant owed a duty to the Plaintiff to ensure his safety, and the Defendants breached this duty. The actions and inactions of Defendant John Does 1-100 led directly to the injuries suffered by the Plaintiff. Defendants MTC and John Does 1-100 as employees are liable for their actions which were undertaken during the course and scope of their employment at MTC.

28. MTC is also responsible for the actions and inactions alleged hereinabove against unknown Defendant John Does 1-100 which caused the damages suffered by the Plaintiff. Also such actions and/or inactions by the individual Defendants were committed within the course and scope of their employment with MTC.

**§ 1983 CAUSES OF ACTION**

29. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 28 hereinabove.

30. The Defendants' employees knew or should have known that inmates planned to attack the Plaintiff on June 19, 2015. Additionally, upon information and belief, the Defendant's employees actually assisted the other inmates in carrying out their attack upon Plaintiff by purposely being absent from their posts at the time and/or opening the cell door, allowing the gang members' access. The factual allegations alleged herein show that Defendants MTC and Doe Defendants 1-100 violated clearly established constitutional rights, including but not limited to:

      a)      Cruel and unusual punishment under the Eighth and Fourteenth Amendments;

      b)      Plaintiff's right not to be deprived of liberty without due process of law;

      c)      Plaintiff's right to be safe and protected from injuries while in Defendants' custody;

      d)      Plaintiff's right to be protected by the correctional officers while under their control; and

      e)      Plaintiff's right to be free from excessive and unreasonable force.

31. Defendant John Does 1-100's actions were clearly not objectively reasonable. At all times, Defendant John Does 1-100 were acting under color of state law.

32. As a direct and foreseeable result of the Defendant John Does 1-100's actions, Plaintiff suffered damage including but not limited to, physical injuries, emotional distress, mental anguish, as well as pain and suffering.

33. Defendant MTC, by and through Defendant John Does 1-100 in their individual and official capacities, established customs, policies and procedures which directly and proximately caused the deprivation of the Plaintiff's constitutional rights as alleged herein. Defendants were deliberately indifferent to the safety of the Plaintiff and other WCCF inmates. These policies created unconstitutional conditions of confinement.

34. Such unwritten policies, customs and practices include but are not limited to the following:

      a.      inadequate and improper training, hiring, supervision and discipline of WCCF corrections officers;

      b.      inadequate and improper procedures and practices in screening, hiring, training, supervising and disciplining officers who practice, condone or use excessive force upon WCCF inmates, including the Plaintiff, in violation of his constitutional rights;

      c.      inadequate and improper procedures, policies and practices for investigating improper activities by WCCF correctional officers either

through offender complaints of misconduct or through internally-initiated complaints or investigations which permits guards to aid and abet gang members housed at WCCF;

d. inadequate or improper procedures, policies and practices for identifying and taking appropriate action against WCCF correctional officers who are in need of re-training, corrective measure, reassignment, or other non-disciplinary actions, through a positive or early warning system designed to prevent the violation of inmates' rights;

e. condoning and allowing WCCF correctional officers to allow inmates to fight;

f. failing to prevent and/or investigate allegations of improper relationships between WCCF correctional officers and WCCF inmates;

g. failing to institute proper gang management policies and procedures;

h. failing to establish policies and procedures to limit the flow of illegal contraband into the facility, including but not limited to drugs, weapons, and cell phones all of which contributed to the atmosphere of violence at WCCF;

i. Allowing inmates to compromise their cell doors and permitting the inmates to leave their cells when they are supposed to be on lock down. Such practice contributed to the atmosphere of violence which existed on the day Plaintiff was attacked;

j. failing to adequately staff WCCF with trained and qualified guards and allowing the prison to be understaffed; and

k. failing to be able to respond to emergency situations like the one in which the Plaintiff was attacked, within the time limit required by MDOC policies and procedures. Such failing is a direct result of having inadequate staffing in place among other things.

35. Upon information and belief, the Plaintiff charges that MTC, through Defendant John Does 1-100, had prior knowledge that a fight was being planned or was sufficiently imminent, yet chose not to take any action to prevent this fight. Defendant John Does 1-100 were deliberately indifferent to the safety of the Plaintiff and other WCCF inmates. As a direct and foreseeable result of the actions and inactions of Defendants MTC and Doe Defendants 1-

100 to take the necessary steps to prevent this fight, the Plaintiff suffered the harm alleged herein.

## PUNITIVE DAMAGES

36. The Plaintiff incorporates all allegations set forth in Paragraphs 1 through 35 hereinabove.

37. The Defendants have acted in complete disregard for the safety of the Plaintiff by acting in a grossly negligent manner as previously described herein. The actions of the Defendants warrant punitive damages.

38. MTC knew that the cell door locks could be easily compromised by inmates and had been aware of this fact since the time MTC took over operating the facility. Despite having this knowledge, MTC failed to take reasonable steps to remedy the locks. This failure directly led to the Plaintiff's injuries.

39. The Defendants' actions exhibited such gross negligence and direct disregard for the safety of the Plaintiff. Punitive damages should be awarded against the Defendants. Defendants' tortious actions have caused the physical injuries suffered by Plaintiff, and the Plaintiff's emotional distress and mental anguish.

## PRAYER FOR RELIEF

The Plaintiff requests a jury trial and seeks the following relief:

A. Compensatory damages of, from and against the Defendants, each and severally, in amount to be determined by this Court;

B. Punitive damages of, from and against the Defendants, in an amount to be determined by this Court;

C. Reasonable attorney's fees and all costs of this court;

D. Pre and post judgment interest; and

E. Such other general and special relief as appears reasonable and just in this cause.

RESPECTFULLY SUBMITTED, THIS the 1st day of December, 2016.

              JOSE HERNANDEZ, PLAINTIFF

         BY: /s/ *Charles R. Mullins*
             CHARLES R. MULLINS

OF COUNSEL:

CHARLES R. MULLINS (MB# 9821)
MERRIDA (BUDDY) COXWELL (MB# 7782)
COXWELL & ASSOCIATES, PLLC
Post Office Box 1337
Jackson, Mississippi 39215-1337
Telephone: (601) 948-1600
Facsimile: (601) 948-1600
chuckm@coxwelllaw.com
merridac@coxwelllaw.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, Charles R. Mullins, counsel of record for the Plaintiff, Jose Hernandez, in the above-styled and referenced matter, do hereby certify that I have this day filed the above and foregoing *Amended Complaint* with the Clerk of Court utilizing the ECF system, who provided notice of same via email to the following individuals:

> R. Jarrad Garner, Esquire
> H. Richard Davis, Jr., Esquire
> ADAMS & REESE, LLP
> 1018 Highland Colony Parkway, Suite 800
> Ridgeland, Mississippi 39157

THIS, the 1st day of December, 2016.

    /s/ *Charles R. Mullins*
    CHARLES R. MULLINS